MARK BRNOVICH
Firm Bar No. 014000
Attorney General

Kevin D. Ray, No. 007485
Leslie Kyman Cooper, No. 012782
Kim S. Anderson, No. 010584
Rusty D. Crandell, No. 026224
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602)542-8349
Email: EducationHealth@azag.gov
*Attorneys for State Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| John Doe, et al., | Case No. CV-16-03001-PHX-SPL |
| Plaintiffs, | **STATE DEFENDANTS' CONSOLIDATED RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION** |
| vs. | **AND** |
| Heritage Academy, Inc., et al., | **PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT** |
| Defendants. | |
| | Honorable Steven P. Logan |

**Introduction**

The State Defendants present their consolidated response to Plaintiffs' Motion for Reconsideration and Plaintiffs' Motion for Leave to File a Second Amended Complaint, pursuant to this Court's Order dated June 23, 2017. Doc. 110.

This Court should deny Plaintiffs' request for reconsideration, which amounts to nothing more than an effort to convince the Court to rethink a well-considered decision. *See e.g., Motorola, Inc. v. J.B. Rodgers Mech. Contractors,* 215 F.R.D. 581, 582 (D.

Ariz. 2003) (a motion for reconsideration is not "to be used to ask the Court to rethink what it has already thought"). The "new" information that Plaintiffs offer does not address their fundamental failure to identify a basis upon which taxpayers may assert standing in this case against the State Defendants. Plaintiffs cannot escape the fact that the decisions they challenge are made by the Arizona State Board for Charter Schools ("Charter Board") in an exercise of executive power. They do not challenge any decisions made in an exercise of legislative power. Their claims thus cannot suffice to support a claim against the Charter Board that the use of taxpayer funding is unconstitutional. Furthermore, Plaintiffs cannot rely on allegations about the Legislature's method of funding charter schools, which are funded from a lump sum appropriation that is apportioned according to a statutory formula, to challenge decisions made by the Charter Board, which is funded by a separate lump sum appropriation.

**I.      Plaintiffs lack taxpayer standing as against the State Defendants.**

"To state a case or controversy under Article III, a plaintiff must establish standing." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011), citing *Allen v. Wright,* 468 U.S. 737, 751 (1984). Standing requires an "injury in fact" that is "fairly traceable" to the challenged action of the defendant. *Id.* at 134, quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). The injury "must affect the plaintiff in a personal and individual way." *Id.* "Absent special circumstances, however, standing cannot be based on a plaintiff's mere status as a taxpayer," because the Supreme Court "has rejected the general proposition that an individual who has paid taxes has a 'continuing, legally cognizable interest in ensuring that those funds are not used by the Government in a way that violates the Constitution.'" *Id.*, quoting *Hein v. Freedom From Religion Found., Inc.,* 551 U.S. 587, 599 (2007).

2

This Court correctly concluded that Plaintiffs cannot assert standing as taxpayers against the State Defendants.[1] This Court reached this conclusion because Plaintiffs' allegations "do not offer any link between the challenged expenditures of public funds and an exercise of legislative power." Order, Doc. 105, at 6. Plaintiffs have not, and cannot, demonstrate a "logical link" between Plaintiffs' taxpayer status and "the legislative enactment attacked," as required by *Flast v. Cohen*, 392 U.S. 83, 102 (1968), because they have not attacked any specific legislative enactment. Furthermore, because no specific legislative enactment is challenged, Plaintiffs cannot show that a "challenged enactment exceeds specific constitutional limitations imposed upon an exercise of the taxing and spending power." *Flast,* 392 U.S. at 102-03.[2] This Court should thus reject Plaintiffs' request for reconsideration and refuse leave to amend the complaint to the extent Plaintiffs attempt to rely on taxpayer standing as a basis for bringing this action.

Plaintiffs do not attack any specific legislative enactment. Doc. 105, at 6. Plaintiffs do not allege that the statutes governing charter schools are unconstitutional. Nor do Plaintiffs assert that any legislative enactment mandates or even allows expenditures by government contrary to the Establishment Clause. They do not raise any other challenge to any specific statute. Rather, Plaintiffs allege that the State Defendants failed to properly carry out their oversight responsibilities pursuant to A.R.S. § 15-182(E)(1) with respect to complaints about religious instruction at the Heritage schools. Doc. 105, at 13. In other words, Plaintiffs challenge the way in which the Charter Board

---

[1] The State Defendants include the Charter Board members, its Executive Director, the Superintendent of Public Instruction to the extent she is named other than in her capacity as a member of the Charter Board, and Craig Brown, Director of the Arizona Department of Administration, a nominal party.

[2] Significantly, as the Court noted, the Supreme Court has not foreclosed the application of *Flast* to challenges in federal court by state taxpayers. Doc. 105, p. 6, n.3. But, by the same token, neither has the Court expressly held that state taxpayers do have standing to seek relief from federal court.

3

exercises its discretion when it carries out its statutory responsibilities, not the nature of the responsibilities themselves.

The failure to challenge a specific statute that allows or mandates spending on religious interests separates this case from *Flast* and *Bowen v. Kendrick,* 487 U.S. 589, 595-96 (1988), as the United States Supreme Court's opinion in *Hein v. Freedom From Religion Foundation, Inc.,* makes clear. The *Hein* court explains why taxpayer standing was appropriate in *Flast* and *Bowen*; in so doing, it demonstrates why taxpayers here lack standing. In *Flast,* plaintiffs alleged that expenditures that were funded by a specific congressional appropriation and were undertaken pursuant to a congressional mandate constituted an Establishment Clause violation. *Hein,* 551 U.S. at 603, citing *Flast*, 392 U.S. at 86. These expenditures were "funded by a specific congressional appropriation and were disbursed to private schools (including religiously affiliated schools) pursuant to a direct and unambiguous congressional mandate." *Hein,* 551 U.S. at 604, citing *Flast,* 392 U.S. at 90.

Plaintiffs' discussion of *Flast* omits any reference to the fact that the *Flast* plaintiffs challenged a specific legislative enactment, the Elementary and Secondary Education Act, which contemplated that funding would go to private religious schools for the purchase of textbooks. They assert that "[i]t was enough that Congress provided the money for the Commissioner to distribute and that the money ultimately ended up funding religion." Mot. for Recons. and Stay of June 22, 2017 Deadline to Amend the Compl., Doc. 107 at 8. This characterization of *Flast's* facts and its holding are simply wrong. Similarly, Plaintiffs' reliance on *Bowen v. Kendrick* is misplaced. There, the Court allowed a taxpayer to bring an Establishment Clause challenge to the Adolescent Family Life Act because it "expressly contemplated that some of [the specifically

4

authorized . . . funds] might go to projects involving religious groups." *Hein*, 551 U.S. at 640, citing *Bowen,* 487 U.S. at 595-96.[3]

This Court should, like the Supreme Court in *Hein,* decline to find that Plaintiffs have standing as taxpayers. Neither the plaintiffs in *Hein* nor Plaintiffs here challenge "any specific congressional action or appropriation." Nor is there a request that the Court "invalidate any congressional enactment or legislatively created program as unconstitutional." *Id.* at 605. There, as here, the funding comes from "general appropriations" that do not "expressly authorize, direct, or even mention the expenditures of which respondents complain." *Id.* There is no law that contemplates that any funds will be allocated to religious instruction. In fact, Arizona law provides that funds will not be allocated for religious instruction. *See* A.R.S. § 15-183(E)(2) (requiring the charters ensure that charter schools are nonsectarian in their programs); A.R.S § 15-535 (prohibiting certificated teachers from engaging in sectarian instruction), Ariz. Const. Art. XI, §7 (prohibiting sectarian instruction in any school or educational institution established under the Arizona constitution), Ariz. Const. Art. IX, § 10 (prohibiting the Legislature from laying a tax or appropriating funding in aid of a sectarian school).

This failure to identify a specific appropriation of funds "occasioned solely by the activities complained of" defeats Plaintiffs' standing whether considered under *Flast*, which governs challenges to Congressional spending, or *Doremus v. Bd. of Educ. of Borough of Hawthorne,* 342 U.S. 429, 434 (1952), which governs challenges to state spending. Because Plaintiffs' allegation against the State Defendants—that they failed to exercise their oversight responsibilities—cannot be tied to any specific appropriation, they cannot assert standing as taxpayers.

---

[3] This Court is not bound by the Minnesota district court's decision in *Am. Civil Liberties Union v. Tarek Ibn Ziyad Acad.,* Civil No. 09–138, 2009 WL 2215072 (D. Minn. July 21, 2009). In any event, the Court's decision to allow taxpayer standing there was colored by its realization that if it denied taxpayer standing to plaintiffs there, no other party would bring an action. *Id.* at *6. Here, that is manifestly not the case.

Plaintiffs argue that taxpayer standing is appropriate here because the legislature "established a charter school program and mandated exactly how much money each charter school will receive." Doc. 107, at 10. They identify this as the "statutory scheme" that brings this case within *Flast* and *Bowen*. *Id.* But, as both this Court and Plaintiffs recognize, charter schools are funded by a legislative appropriation which is apportioned to schools according to a statutory formula that takes into account student enrollment, school size and certain characteristics of students, such as whether they are entitled to receive special education services, are English Language Learners, or in kindergarten through third grade.[4] This funding scheme is not the same as the scheme that was challenged in either *Flast* or *Bowen*.

Also, Plaintiffs do not allege that the Legislature either contemplates or mandates that the general funding appropriated to charter schools will cover any costs of religious instruction, or indeed, any activities at all related to religion. And, in fact, as a review of Senate Bill 1522 and House Bill 2545 demonstrate (*see* fn. 4), the Legislature does not contemplate funding such activities. Nowhere does either mention religion or religious activities.

Furthermore, the legislative scheme that funds charter schools is entirely separate from funding for the Charter Board. For that reason, there can be no taxpayer standing against the Board. The allegation that taxpayer standing is present because the legislature

---

[4] State Defendants request that this Court take judicial notice of these official documents. Fed. R. Evid. 201: S.B. 1522, 53rd Leg., 1st Reg. Sess. (Ariz. 2017) https://apps.azleg.gov/BillStatus/GetDocumentPdf/454115, contains the Legislature's appropriation from the general fund for basic state aid to district and charter schools for fiscal year 2018. *See* § 33 for the appropriation to Arizona Department of Education for basic state aid to district and charter schools. The budget reconciliation bill for education for fiscal year 2018 is at H.B. 2545, 53rd Leg., 1st Reg. Sess., (Ariz. 2017), https://apps.azleg.gov/BillStatus/GetDocumentPdf/454114, *See also* A.R.S. § 15-901 (defining average daily membership, base support level and other terms used in determining a school's funding); A.R.S. § 15-943 (describing "base support level" and "weighted student count" factors for purposes of school funding).

appropriates money for charter schools and gave the Charter Board authority to grant charters to schools should not suffice to allow a taxpayer to challenge specific decisions of the Charter Board.  *See* Doc. 107 at 9; Lodged Second Am. Compl., Doc. 109, ¶ 310 ("Heritage Academy receives public funds because the legislature created and approved a charter-school program in which Heritage participates.")   The decisions at issue here are regulatory decisions, such as whether to grant a charter or how to investigate a complaint, pursuant to its statutory authority.  The Charter Board, which carries out these functions, is funded separately from the funding that Heritage receives.[5]  And Plaintiffs have failed to even identify this funding, let alone make any allegation linking the alleged wrongful conduct, any specific statute and this appropriation.

Plaintiffs also argue that their allegation that the Heritage Schools have spent a measurable amount of money on textbooks in furtherance of religious instruction suffices to support taxpayer standing.  However, the public funding provided to Heritage is governed by a statutory formula and does not change based on Heritage's decisions about how to spend that money.  Furthermore, none of the State Defendants played any role in any decision by Heritage with respect to how to allocate its funding generally, or more specifically, with respect to the selection and use of any textbooks or other instructional materials.  Thus, Plaintiffs cannot show the requisite "dollars-and-cents injury" tied to any action taken by the State Defendants here.  *See Doremus,* 342 U.S. at 434.  Therefore, even accepting the claim as true, it cannot support taxpayer standing in furtherance of a claim against the State Defendants.

Lastly, neither *PLANS, Inc. v. Sacramento City Unified Sch. Dist.*, 319 F.3d 504 (2003) nor *Am. Civil Liberties Union of Massachusetts v. Sebelius*, 697 F.Supp. 2d 200 (2010) supports standing against the State Defendants.  In *PLANS*, the court found standing because plaintiffs "objected to the entire Waldorf curriculum of the two schools

---

[5] *See* § 18 of S.B. 1522 for the lump sum appropriation to the Charter Board.

1 in question" as religious. *PLANS,* 319 F.3d at 506. No such allegation is made here. In
2 *Sebelius,* the district court labeled it a close question, but concluded that the ACLU had
3 alleged a sufficient link between the "congressional power to tax and spend and a
4 possible violation of the Establishment Clause in the grant of public funds to the
5 USCCB." *Sebelius,* 697 F. Supp. 2d at 210. There is no reason for this Court to extend
6 taxpayer standing here as the Massachusetts court did in *Sebelius*.

7 **II.    The Charter Board Does Not Exercise "Delegated Legislative Authority."**

8 This Court should reject Plaintiffs' half-hearted attempt to argue that the Charter
9 Board exercises "delegated legislative authority," pursuant to *Misretta v. United States,*
10 488 U.S. 361, 412 (1989). Doc. 107, at 8. There, the Supreme Court concluded that the
11 United States Sentencing Commission did not exercise excessive legislative authority, in
12 violation of the non-delegation doctrine. The Court did not announce, or even address,
13 any rule that might guide one in determining what it would mean to exercise "delegated
14 legislative authority," apart from the question of whether the non-delegation doctrine had
15 been violated. Moreover, although Plaintiffs assert that the Charter Board exercises
16 delegated legislative authority because three of its members are legislators[6] and it
17 recommends legislation, it does not explain how these facts compel that conclusion. In
18 fact, many State boards and commissions include legislators, yet do not exercise
19 delegated legislative authority. And, nothing compels the conclusion that the Legislature
20 delegated legislative authority to the Charter Board when it gave them the responsibility
21 to "recommend legislation," (A.R.S. § 15-182(E)(1)), a task that anyone, regardless of
22 affiliation, may undertake in our democracy.

23

---

24 [6] The legislators rarely attend meetings. The Court can take judicial notice of this fact,
25 pursuant to Fed. R. Evid. 201, because the Charter Board publishes a meeting summary
on its website at https://asbcs.az.gov/board-staff-information/meeting-dates-
26 materials/archive. The meeting summaries identify the Board members who were present
at a meeting.
27

28

8

**III. The Doe Plaintiff Should Be Required to Reveal His True Identity to the State Defendants.**

Plaintiffs challenge this Court's requirement that the Doe Plaintiff use his true initials. They explain that the Doe Plaintiff's use of his true initials will likely make it easy for members of the Heritage school community to determine his true identity and more importantly, that of his children. Doc. 107, at 13 – 17. But the Doe Plaintiff does not mention any concerns that justify his continuing to hide his identity from the State Defendants. And, in fact, there is no reason for the Doe Plaintiff's identity to be kept from the State Defendants. *See e.g., Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate,* 596 F.3d 1036, 1042 (9th Cir. 2010) (describing the five factors that justify allowing a party to proceed anonymously). The State Defendants, or at the very least, appropriate staff members of the State Defendants and their counsel, should be permitted to know the Doe Plaintiff's true identity. State Defendants and their counsel need this information to determine whether the Doe Plaintiff made any complaints to the Charter Board so that they can make an informed decision with respect to whether to challenge his standing to maintain this claim against the State Defendants. For this reason, the State Defendants respectfully request that this Court require the Doe Plaintiff to reveal his true identity to the State Defendants, including staff of the State Defendants, who will agree to keep such information confidential unless and until it is otherwise revealed.[7]

**IV. Plaintiffs Failed to Comply with the Court's Order to File a Compliant Complaint.**

Plaintiffs failed to comply with this Court's Order, which required they file an amended complaint consistent with this Court's Order. Order, Doc. 105, at 25. Rather than comply with the Court's clear mandate, Plaintiffs chose to seek leave to file a Second Amended Complaint that doubled down on the allegations like those that this

---

[7] At this point, State Defendants do not challenge the standing of the Doe Plaintiff to assert a claim or claims against the Charter Board alleging Establishment Clause violations personal to him and his child, but seek his identity to conduct discovery to determine if such a challenge is warranted.

Court had just dismissed.  This Court should not permit Plaintiffs to proceed in this fashion.  Leave to file this non-compliant complaint should be denied.

**V.   The Proposed New Plaintiffs Do Not State a Claim Against the State Defendants.**

The proposed new plaintiffs do not state a claim against the State Defendants. They do not allege that they made complaints to the Charter Board.  For this reason, the State Defendants do not address Plaintiffs belated effort to add new plaintiffs who graduated the Heritage schools years ago.  However, the State Defendants join the Heritage Defendants' consolidated response to the extent it asserts a statute of limitations defense.

**Conclusion**

For the reasons stated above, the State Defendants respectfully request that this Court deny Plaintiffs' Motion for Reconsideration and deny Plaintiffs' Motion for Leave to Amend their Complaint.

RESPECTFULLY SUBMITTED this 14th day of July, 2017.

> MARK BRNOVICH
> Attorney General
>
> By /s/  Leslie Kyman Cooper
>   Kevin D. Ray
>   Leslie Kyman Cooper
>   Kim S. Anderson
>   Rusty D. Crandell
>   Assistant Attorneys General
>   *Attorneys for State Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants of record.

/s/  Koren Lyons

#6075613